UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| ANNA MARIE FRISBY-WOODS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) NO. 5:20-cv-00420-MAS |
| v. | ) |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| | ) |
| Defendant. | ) |

**OPINION & ORDER**

Plaintiff Anna Marie Frisby-Woods ("Frisby-Woods") appeals the Commissioner's denial of her Disability Insurance Benefits ("DIB") application under Title II of the Social Security Act. The Court addresses the parties' competing summary judgment motions. [DE 18, 20]. For the reasons discussed below, the Court finds that the Administrative Law Judge ("ALJ") applied the proper standards and that the ALJ's decision is supported by substantial evidence. The Court therefore affirms the Commissioner's decision to deny Frisby-Woods disability benefits.

**I.  FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff protectively filed a DIB application on June 4, 2017, originally alleging disability beginning on February 7, 2014. [R. 15]. She eventually amended her alleged onset date to May 16, 2017. [*Id.*]. Plaintiff was 50 years old on the amended alleged onset date. [R. 41]. She has completed some college education and has past work as a school secretary / administrative assistant and as a house manager at a Christian boarding school. [R. 55-60]. The Social Security Administration ("SSA") denied Plaintiff's claim initially on August 15, 2017, and upon

1

reconsideration on November 21, 2017. [R. 15]. Frisby-Woods submitted a written request for a hearing on January 12, 2018. [*Id.*].

ALJ Davida H. Isaacs ("ALJ Isaacs") conducted a hearing on May 16, 2019, in Lexington, Kentucky. [R. 37]. Patsy R. Hughes, a non-attorney representative, represented Plaintiff at the hearing, and impartial Vocational Expert Martha Goss ("VE Goss") appeared and testified. [*Id.*]. On November 8, 2019, ALJ Isaacs issued an opinion finding that Frisby-Woods was not disabled under the Social Security Act during the relevant period. [R. at 15-31]. ALJ Isaacs found that Plaintiff met the applicable insured status requirements, had not engaged in substantial gainful activity since the alleged onset date, and suffered from several severe impairments: degenerative disc disease of the lumbar spine, osteoarthritis, restless leg syndrome, fibromyalgia, diabetes, sleep apnea, inflammatory bowel syndrome, depressive disorder, and anxiety disorder. [R. 17]. *See* 20 C.F.R. § 404.1520(c). However, the ALJ found that none of these impairments alone or in combination met or medically equaled a Subpart P, Appendix I listing. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. [R. 18].

ALJ Isaacs ultimately found that Frisby-Woods had the residual functional capacity ("RFC") to perform light work, with certain outlined adjustments. [R. 21-28]. In addition to certain physical restrictions, ALJ Isaacs concluded that Plaintiff "may be off task up to 5 percent of the workday; and may be absent from work for one day per quarter." [R. 21]. *See* 20 C.F.R. § 404.1567(b). Based on the information in the record, including the formulated RFC and testimony at the hearing from VE Goss, ALJ Isaacs found that Plaintiff could perform her past relevant work as a school secretary and as a house parent/manager. [R. 28]. ALJ Isaacs further found that Plaintiff could also perform other jobs that existed in sufficient numbers in the national economy, including counter clerk, general clerk, and survey worker. [R. 29-30]. ALJ Isaacs thus

concluded that Frisby-Woods had not been disabled within the SSA framework since the alleged onset date. [R. 30]. *See* 20 C.F.R. § 404.1520(f).

The Appeals Council denied review in August 2020. [R. 1]. Frisby-Woods subsequently initiated this action to challenge ALJ Isaacs's decision, which became the final agency decision upon Appeals Council denial. [DE 1 (Complaint)]. Both Frisby-Woods and the Commissioner have sought summary judgment. [DE 18 and 20, respectively]. The motions are ripe for review. For the reasons discussed below, the Court grants the Commissioner's motion and denies Frisby-Woods's motion.

## II.   LEGAL FRAMEWORK[1]

Judicial review of the ALJ's decision is deferential and strictly limited. The Court's sole task is to determine whether the ALJ applied the correct legal standards and whether the ALJ's factual findings are supported by substantial evidence in the record. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"). Substantial evidence is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "The substantial-evidence standard allows

---

[1] The Court notes that the legal standard for DIB claims mirrors the standard for Supplemental Security Income ("SSI") claims. *See Bailey v. Sec'y of Health & Human Servs.*, 922 F.2d 841, No. 90-3265, 1991 WL 310, at *3 (6th Cir. 1991) (table). "The standard for disability under both the DIB and SSI programs is virtually identical." *Roby v. Comm'r of Soc. Sec.*, No. 12-10615, 2013 WL 451329, at *3 (E.D. Mich. Jan. 14, 2013), *report and recommendation adopted*, 2013 WL 450934 (E.D. Mich. Feb. 6, 2013); *see also Elliott v. Astrue*, No. 6:09-CV-069-KKC, 2010 WL 456783, at *4 (E.D. Ky. Feb. 3, 2010). The Court thus references both SSI and DIB case law interchangeably throughout, mindful of the distinct Title II DIB-specific regulations.

considerable latitude to administrative decision makers" and "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

The Court must make its substantial evidence determination based on the record as a whole. *Cutlip*, 25 F.3d at 286. However, the Court need not comb the entire record in search for facts supporting under-developed arguments. [*See* General Order No. 13-7 (citing *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006)) ("The parties shall provide the Court with specific page citations to the administrative record to support their arguments. The Court will not undertake an open-ended review of the entirety of the administrative record to find support for the parties' arguments.")]. Further, the Court may not "try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Court must affirm the ALJ's decision if there is substantial evidence in the record to support it, even if substantial evidence might also support the opposite conclusion. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 393 (6th Cir. 2004); *Mullen*, 800 F.2d at 545. Likewise, the Court must affirm any ALJ decision supported by substantial evidence, even if the Court itself might have reached a different original result. *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

For context, the Court briefly outlines the ALJ's five-step sequential analysis. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 416.920(a)(4). In the first step, the ALJ decides whether the claimant is performing substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). In the second step, the ALJ determines whether the claimant suffers from any severe impairments. *Id.* at § 416.920(a)(4)(ii). In the third step, the ALJ decides whether

such impairments, either individually or collectively, meet an entry in the Listing of Impairments. *Id.* at § 416.920(a)(4)(iii). In the fourth step, the ALJ determines the claimant's RFC and assesses whether the claimant can perform past relevant work. *Id.* at § 416.920(a)(4)(iv). Finally, in the fifth step, the burden shifts to the Commissioner. The ALJ must consider and decide whether there are jobs that exist in significant numbers in the national economy that the claimant could perform based on RFC, age, education, and work experience. *Id.* at § 416.920(a)(4)(v). If the ALJ determines at any step that the claimant is not disabled, the analysis ends there. *Id.* at § 416.920(a)(4).

ALJ Isaacs proceeded through all five sequential steps in this case. The Court evaluates her analysis and Plaintiff's arguments challenging it as set forth below.

### III.    ANALYSIS

As is typical for DIB cases, the overarching issue is whether ALJ Isaacs's disability determination is supported by substantial evidence in the record and whether ALJ Isaacs applied the correct procedural standards. In particular, Frisby-Woods argues that ALJ Isaacs failed to adequately explain and articulate her consideration of the regulatory factors in relation to the mental health opinion from Dr. Cristi M. Hundley, Ph.D. ("Dr. Hundley"), who conducted a consultative examination of Plaintiff and issued a corresponding opinion in August 2017. Plaintiff relatedly argues that the mental limitations reflected in ALJ Isaacs's ultimate RFC are not restrictive enough, as they do not account in full for Dr. Hundley's opined limitations, and that the RFC as it relates to mental limitations thus is unsupported by substantial evidence. Notably, Plaintiff does not challenge the ALJ's handling of any of the physical medical evidence or any of the physical restrictions included in the RFC.

5

For the reasons here discussed, the Court rejects both of Plaintiff's challenges to the mental health aspects of the RFC and supporting analysis. The Court concludes that ALJ Isaacs complied with the regulatory standards in assessing Dr. Hundley's opinion and that the mental RFC is supported by substantial evidence in the record. Affirmance of the agency decision is required.

A.  **THE ALJ ADEQUATELY CONSIDERED AND ARTICULATED DR. HUNDLEY'S OPINION.**

The updated Social Security regulations governing the ALJ's handling of medical evidence from various sources apply in this case given the application's filing after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-5884 (Jan. 18, 2017). The relevant revisions altered the hierarchy of medical sources and how the ALJ evaluates medical opinion evidence. [*Id.*]. Under the revised regulations, particular medical sources no longer receive specific evidentiary weight, and the ALJ simply must articulate how persuasive each medical opinion is with respect to various relevant factors. 20 C.F.R. §§ 404.1520c, 416.920c. The most important of these factors are the medical opinion's supportability and consistency, and the ALJ must state in his decision how he considered the supportability and consistency factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ may consider other listed factors as appropriate, including the extent of the source's treatment relationship with the claimant, the frequency of examinations, and the source's specialization.

Dr. Hundley, a state agency psychological consultant, examined Plaintiff on August 2, 2017, on referral from the Kentucky Department for Disability Determination. [R. 337 (Exhibit 3F)]. She opined that Plaintiff suffered from major depressive disorder, though she stated that Plaintiff appeared alert, present, and cooperative and reported engaging in several regular personal and household activities, such as cleaning, reading, and attending church 3-4 times per week. [R. 337-39]. Dr. Hundley further opined that Plaintiff had fair ability to understand and remember

6

instructions and to maintain attention and concentration. She also found that Plaintiff's "ability to interact appropriately in a work setting is moderately limited and her ability to handle the stresses typically associated with a work environment is moderately to markedly limited and highly related to her level of physical pain." [R. 339]. Dr. Hundley concluded by stating that a physician would have to opine as to the pain prognosis and any limitations related to it. [*Id.*].

Though ALJ Isaacs incorporated some mental restrictions into the RFC in part based on Dr. Hundley's opinion [*see* R. 25], she found Dr. Hundley's assessment largely unpersuasive because it was "internally inconsistent *and* inconsistent with the longitudinal evidence[,]" namely the other normal mental findings in the record and many of Plaintiff's own reports of her activities and functioning. [R. 26-27 (emphasis in original)]. ALJ Isaacs characterized Dr. Hundley's opinion as "inconsistent with the relatively normal mental status examinations seen in treating source records[.]" [R. 27]. She also (less helpfully, as discussed below) observed that Plaintiff had not sought mental health treatment per the record. Finally, a fair reading of ALJ Isaac's analysis as it relates to Dr. Hundley's opinion confirms that ALJ Isaacs found the opinion lacking in support because it was based in large part on subjective reports of Plaintiff's functioning that are inconsistent with other evidence in the record and because it lacked detail and explanation. [R. 25 (noting that Dr. Hundley's opinion was based both on her exam findings and on "the claimant's reported symptoms" and proceeding to discuss the reported symptoms' inconsistency with other evidence of record); R. 27 (stating that "Dr. Hundley's assessment fails to provide a detailed analysis or description of the claimant's mental limitations")].

Plaintiff argues that the ALJ's analysis of this source opinion does not comply with § 404.1520c because it fails to appropriately consider the consistency and supportability of Dr. Hundley's assessment, as required by the regulation. 20 C.F.R. § 404.1520c(b)(2) (providing that

7

consistency and supportability are the key factors and promising that the agency "will explain how [it] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in" the administrative decision). The ALJ thus must consider, and articulate her consideration of, the source opinion's consistency with other medical and nonmedical evidence in the record and the quantum of relevant, objective medical evidence and supporting explanations presented by the medical source to support her opinion. Plaintiff argues that ALJ Isaacs failed to discharge this duty because she phrased things imprecisely, relied on improper considerations, and erred in ignoring the physical pain proof when considering Dr. Hundley's opinion's consistency with the overall record.

First, the Court agrees that ALJ Isaac's use of the "internally inconsistent" phrase was inartful, as the remainder of ALJ Isaac's analysis makes clear that she instead found the opinion to be *externally* inconsistent with the other evidence of record. Indeed, she found the Hundley opinion itself to be based on and in effect internally consistent with Dr. Hundley's clinical findings and Plaintiff's reported symptoms, though ALJ Isaacs reasonably slightly discounted the degree of support the subjective reports offered as discussed below. In any event, despite the stray phrase, ALJ Isaacs did not actually find that the Hundley opinion was internally inconsistent or rely on that as a basis for finding it unpersuasive. A reasonable reading of the ALJ decision in full confirms that, rather, the key finding and basis was the opinion's inconsistency with the record as a whole, as envisioned by the § 404.1520c(c)(2) factor. *See Sizemore v. Saul*, No. CV 20-273-DLB, 2021 WL 4432476, at *5 (E.D. Ky. Sept. 27, 2021) (rejecting a "magic words" requirement in relation to the ALJ's assessment of evidence underlying his RFC determination); *Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 678–79 (7th Cir. 2010) (observing that the ALJ's rationale

need not come in "tidy packaging" and that courts must " read the ALJ's decision as a whole and with common sense").

Second, the Court also agrees with Plaintiff that ALJ Isaacs's emphasis on Plaintiff's failure to pursue mental health treatment provides negligible support for her overall handling of the Hundley proof in this context. ALJ Isaacs accurately observed that the record shows that Frisby-Woods "has not participated [in] or sought counselling or other supportive psychotherapy treatment for her symptoms." [R. 25]. Though true, the Court doubts the probative value of this observation in the mental health context, and courts have expressed similar reservations. *See, e.g.*, *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989) ("Appellant may have failed to seek psychiatric treatment for his mental condition, but it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.").

Notwithstanding these issues, however, the remainder of ALJ Isaacs's assessment of Dr. Hundley's opinion adequately analyzes the consistency and supportability factors in compliance with the relevant regulations. Citing several normal mental findings elsewhere in the record, ALJ Isaacs specifically found that Dr. Hundley's opinion was "inconsistent with the relatively normal mental status examinations seen in treating source records[.]" [R. 27]. This conclusion is reasonable and supported by the cited evidence. [*See* R. 342 (normal mental status findings on objective examination in August 2017); R. 362 (normal psychiatric findings in October 2017); R. 415 (same in January 2018); R. 431 (same in February 2018); R. 466 (awake, alert, and pleasant demeanor on examination in March 2019)]. The ALJ also found Dr. Hundley's opined mental limitations partially inconsistent with Plaintiff's reports of attending church regularly and managing household duties and with Plaintiff's observed interactions with numerous medical providers. This too is a reasonable interpretation of the proof and is supported by the record. [R.

9

27 (discussing Exhibits 5E, 4F, 6F, 11F, 12F, and 13F and contrasting Dr. Hundley's view that Plaintiff was moderately limited in her ability to interact appropriately in a work setting with the record evidence of Plaintiff's regular church attendance, regular communication with family, and appropriate affect and interaction during numerous medical visits)]. This discussion collectively and fully articulates ALJ Isaac's consideration of the consistency factor.

As it relates to Dr. Hundley's opinion's supportability, ALJ Isaacs further found that, though the opinion was based on Dr. Hundley's clinical observations and Frisby-Woods's self-reported symptoms, it was not supported by objective medical data or by thorough narrative explanations. [R. 25-27]. ALJ Isaacs reasonably found the subjective reports only partially supportive of Dr. Hundley's ultimate opinion given their inconsistency with the record as a whole, as discussed above. *See also Glasgow v. Comm'r of Soc. Sec.*, 690 F. App'x 385, 387 (6th Cir. 2017) (finding that the ALJ reasonably discounted a source opinion "because it was based in part on [the claimant's] unreliable subjective complaints and his inconsistent effort during the examination"). Additionally, though Dr. Hundley recounted several personal observations of Plaintiff's mental functioning, there is little narrative detail in the three-page report translating those observations into functional terms. [R. 337-39]. ALJ Isaacs thus reasonably found Dr. Hundley's opinion unsupported and unpersuasive in that regard. [R. 27]. Accordingly, as with the consistency factor, ALJ Isaacs adequately discussed supportability.

Plaintiff's contrary arguments and effort to characterize the physical pain evidence in the record as consistent with and supportive of Dr. Hundley's mental restriction opinion logically fails. Plaintiff essentially argues that the evidence of her physical impairments and related pain too supports Dr. Hundley's more severe mental restrictions because Dr. Hundley vaguely opined that Plaintiff's pain levels and mental functioning were inversely related. The record concerning

10

Plaintiff's physical ailments indeed confirms varying levels of pain throughout her treatments.[2] But Dr. Hundley did not opine as to any precise ratio of pain to mental functioning, such that an objective look at the frequency and extent of physical pain symptoms present elsewhere in the record could inherently correlate with any particular mental functioning level. Dr. Hundley in fact expressly disclaimed any ability to so extrapolate, advising that the true effect of the physical pain would have to be addressed by a physician. [R. 339].

Absent such information from an actual medical source in the record, neither the Court nor the parties are positioned to discern the degree of impact, if any, of Plaintiff's physical pain on her mental limitations. Dr. Hundley's opinion stopped short of explaining or expounding upon the purported connection. The overall lack of explanation and detail is a legitimate deficiency with the Hundley proof, as ALJ Isaacs reasonably recognized, and the Court cannot backfill attenuated physical impairment and pain proof from other places in the record to support Dr. Hundley's mental functioning opinion. The evidence of Frisby-Woods's physical impairments and related pain thus offers no additional support for Dr. Hundley's mental functioning opinion and does not render ALJ Isaac's assessment of Dr. Hundley's opinion unreasonable or procedurally noncompliant.

For these reasons, the Court finds that ALJ Isaacs adequately considered and articulated the appropriate regulatory factors as applied to Dr. Hundley's opinion. Critically, "[a]lthough the ALJ must discuss significant evidence supporting her decision and explain her conclusions with sufficient detail to permit meaningful review, there is no requirement that the ALJ incorporate all the information upon which she relied into a single paragraph." *Bryant v. Comm'r of Soc. Sec.*,

---

[2] As noted, Frisby-Woods has not challenged or raised any arguments relating to the physical impairment or pain evidence or the ALJ's assessment of it.

No. 3:19-CV-0079, 2019 WL 5684456, at *10 (N.D. Ohio Nov. 1, 2019). Rather, read in the aggregate, the ALJ's analysis simply must "build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)). ALJ Isaacs supplied sufficient analytical detail to build a logical bridge between her assessment of the consistency and supportability factors in relation to the Hundley opinion and her conclusion as to its persuasive value. Such assessment was reasonable per the evidence of record, as discussed, and it complied with the regulatory and procedural standards. The Court thus may not disturb the ALJ's findings in this regard on review.

**B.     SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S MENTAL RFC FINDINGS.**

Finally, the Court briefly summarizes the substantial quantum of evidence ALJ Isaacs put forth in support of the mental restrictions included in the RFC. Such evidence and the record as a whole demonstrate that the ALJ did not err by declining to include more restrictive mental findings in the RFC. As noted, ALJ Isaacs surveyed the many normal mental status findings included in source's examination notes and findings throughout the record and throughout the relevant period. [*See* R. 342 (normal mental status findings on objective examination in August 2017); R. 362 (normal psychiatric findings in October 2017); R. 415 (same in January 2018); R. 431 (same in February 2018); R. 466 (awake, alert, and pleasant demeanor on examination in March 2019)]. These objective medical findings, which frequently reflect a normal mood and affect and alert, cooperative demeanor, support no more than minimal (if any) mental functioning issues. Additionally, ALJ Isaacs reasonably found that Plaintiff's reports of her own personal and social activities supported a greater mental functioning capacity than that indicated by Dr. Hundley. [R. 27; *see generally* Exhibits 5E, 4F, 6F, 11F, 12F, and 13F].

Reconciling this largely normal mental status proof with Dr. Hundley's more restrictive functioning opinion—which, though it noted fair memory and concentration, did opine that Plaintiff has some difficulty managing workplace stresses—ultimately supports the RFC found by ALJ Isaacs. [R. 21]. The ALJ found that Frisby-Woods may be off task up to 5% of the workday and may be absent from work once per quarter. [*Id.*]. This fairly reflects the mild to moderate degree of memory and stress management difficulty supported by the record and appropriately takes all of the evidence in the record into account. The ALJ's RFC as it relates to mental restrictions is thus supported by substantial evidence. Accordingly, affirmance is required, notwithstanding any evidence—even substantial evidence—in the record supporting an opposite conclusion. *See Warner*, 375 F.3d at 393; *Mullen*, 800 F.2d at 545.

## IV.  CONCLUSION

For all of the reasons discussed, the Court finds that ALJ Isaacs's administrative decision denying Plaintiff disability benefits is supported by substantial evidence in the record and applies the proper procedural and regulatory standards. Accordingly, **IT IS ORDERED** that the Commissioner's motion for summary judgment [DE 20] is **GRANTED** and Frisby-Woods's competing motion [DE 18] is **DENIED**. A corresponding Judgment shall follow.

This the 23rd day of March, 2022.



Signed By:
Matthew A. Stinnett  /s/ MAS
United States Magistrate Judge